IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| 7-ELEVEN INC. #F39372 | * | |
| | * | |
| **Plaintiff** | * | |
| v. | * | **CASE NOS.:   1:15-cv-00543-GLR** |
| | * | |
| UNITED STATES OF AMERICA | * | |
| | * | |
| **Defendant** | * | |

*****************************************************************************

<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE TO MOTION
TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT</u>

### I.    INTRODUCTION

On October 15, 2014, the U.S. Department of Agriculture ("USDA") charged 7-Eleven, Inc. #F39372 ("Plaintiff") with trafficking in food stamp benefits at the convenience store, located at 9856 Liberty Road, Randallstown, Maryland 21136. (A.R. 10-12).  The charges stem from the USDA investigation which revealed that on two (2) occasions, a clerk at the store, accepted Supplemental Nutrition Assistance Program ("SNAP") benefits in a manner that indicated that the SNAP benefits were improperly accepted in exchange for non-food items and/or cash. According to the USDA Final Agency Decision, the Plaintiff failed to submit to FNS *substantial* evidence demonstrating that Plaintiff established and implemented an effective compliance policy and program to prevent SNAP violations, thus resulting in permanent disqualification from participation in the SNAP program pursuant to 7 C.F.R. §278.6(e)(1).

Plaintiff now seeks judicial review of the USDA Final Agency Decision pursuant to 7 U.S.C. §2023(a)(13). Notably, Plaintiff does not challenge the factual accuracy of the data relied upon by the USDA investigators; rather, pursuant to 7 U.S.C. §2023(a)(13) and 7 C.F.R. §279.7, the Plaintiff petitions the court for *de novo* judicial review of the USDA Final Agency Decision,

1

including its permanent disqualification of Plaintiff from participating as an authorized SNAP retailer as well as its denial of imposing of a civil monetary penalty (CMP) in lieu of permanent disqualification, as permitted pursuant to 7 C.F.R. §278.6(i).

As stated in the Plaintiff's Complaint, pursuant to 7 C.F.R. §279.7(c), the suit in the U.S. district court "shall be a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action." Thus, the Plaintiff's complaint should not be dismissed because it is an appeal from a decision of an Administrative Agency which places an extreme burden on the Plaintiff to not only **prove** the existence of its compliance policy and program, regardless of limited number of trafficking infractions, or even the owner's lack of knowledge and/or involvement with the trafficking incidents, but also, Plaintiff is required to provide substantial evidence to satisfy the six (6) requirements for a civil monetary penalty (CMP), in lieu of permanent disqualification. Notably, regardless of the nature and extent of the substantial evidence provided in support thereof, when evaluating the existence and effectiveness of the Plaintiff's compliance policy, pursuant to 7 C.F.R. §278.6(i)(1)(i)-(vi), the regulation is clear that FNS *may* consider these factors; however, it is not required to do so, regardless of the nature and extent of the substantial evidence provided by Plaintiff in support thereof.

The Plaintiff is entitled to relief on its petition for review as the Plaintiff disputes the allegations of trafficking and moreover, even assuming *arguendo*, that the court finds that the violations occurred, the sanction for trafficking is reviewed under an arbitrary and capricious standard and herein, the SNAP regulations do not mandate permanent disqualification but rather, provide for a civil monetary penalty if the Plaintiff satisfies specific criteria justifying this alternative CMP. Although the Agency's findings are fully documented in the administrative record, Plaintiff disputes the agency's exercise of discretion in failing to impose a civil monetary

2

penalty in lieu of permanent disqualification when the former is not only a permissible sanction, but a more appropriate sanction based on the substantial evidence provided by Plaintiff in support of both its appeal and Complaint filed herein. Thus, the court should not dismiss the action, nor should this Honorable Court grant summary judgment in favor of the Agency. Plaintiff incorporates the Government's previously filed Administrative Record (ECF No.11).

## II.    OVERVIEW OF SNAP BENEFITS PROGRAM

### A. GENERAL BACKGROUND

The Supplemental Nutrition Assistance Program ("SNAP"), which is operated by the USDA, is a government program which aims to increase the ability of eligible households to purchase food items by providing said households with supplemental funds which may be used at authorized retailers to purchase eligible food items.[1] The SNAP benefits, which are provided in monthly installments, are delivered onto an Electronic Benefit Transfer card ("EBT"), similar to a debit card, and may only be redeemed for purchases of eligible food items.[2] SNAP is administered by FNS which is responsible for delivering a household's benefits onto the EBT card. The eligible household receives monthly EBT benefit transfers onto their cards and then the EBT card is used at authorized retailers to purchase eligible food items.[3]

Pursuant to SNAP regulations, retail food store owners may not accept EBT benefits as payment for ineligible items, such as non-food items and alcoholic beverages, nor may authorized retailers exchange EBT benefits for cash.[4] FNS is also authorized to disqualify and/or assess a civil monetary penalty ("CMP") against an authorized retail store if the store fails to

---

[1] *See* 7 U.S.C. §2011-2036; *see also* 7 U.S.C. §2013.
[2] *See* 7 U.S.C. §2013; *see also* 7 C.F.R. §271.2.
[3] *See* 7 U.S.C. §2016(j); *see also* 7 U.S.C. §2013(a).
[4] *See* 7 C.F.R. §271.2.

3

comply with provisions of the Food and Nutrition Act, or a regulation promulgated therein.[5] Such a disqualification must be based on "a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system, or the disqualification of a firm from the Special Supplemental Nutrition Program for Women, Infants, and Children."[6] Notably, the period of disqualification can range from six months (for a first time offense of exchanging ineligible non-food items for EBT benefits) to permanent disqualification, *depending on the nature of the violation*, although in certain circumstances, FNS has discretion to impose a CMP in lieu of disqualification.[7]

When an investigation results in Agency action to disqualify a store or assess a CMP on the owner, Title 7, C.F.R., parts 278 and 279 provide for a system of administrative and judicial review. After receiving notice of the action, the aggrieved retailer my request review of the administrative action by FNS.[8] If review is sought, the administrative action is held in abeyance pending disposition of the request for review, unless the penalty is permanent disqualification based upon trafficking violations.[9] Upon completion of the review, FNS renders the "Final Agency Decision" and notified the retailer. This Final Agency Decision becomes effective 30 days from the date of delivery. Judicial Review is also provided by the same statute.[10]

---

[5] *See* 7 U.S.C. §2021(a); *see also* 7 C.F.R. §278.6.
[6] *See* 7 C.F.R. §278.6(a).
[7] *See* 7 C.F.R. §278.6(a)(1), (e)(1), (f), and (i) (emphasis added).
[8] *See* 7 U.S.C. §2023(a); *see also* 7 C.F.R. §279.1, §279.5(c).
[9] *See* 7 C.F.R. §279.1, §279.4(a).
[10] *See* 7 C.F.R. §279.5(e)-(f).

4

**B. TRAFFICKING PENALTIES PURSUANT TO SNAP REGULATIONS**

Trafficking, which is defined in 7 C.F.R §271.2, generally involves the exchanging of SNAP benefits for cash or other consideration other than eligible food items. Pursuant to 7 U.S.C §2021(b)(3)(B) and 7 C.F.R. §278.6(e)(1)(i), the penalty is permanent disqualification although FNS has the discretion to impose a CMP in lieu of permanent disqualification in certain circumstances.[11] The hardship CMP that is available as an alternate sanction, which is a less than permanent disqualification, is not available in cases of trafficking.[12] FNS may impose a CMP in lieu of permanent disqualification if the store submits substantial evidence that it established and implemented an effective compliance policy and program to prevent SNAP violations.[13] The regulations establish four criteria which the store must satisfy through "substantial evidence" in order for FNS to have the discretion to impose a CMP in lieu of permanent disqualification:

> *Criterion 1.* The firm shall have developed an effective compliance policy as specified in §278.6(i)(1); and
>
> *Criterion 2.* The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred *prior* to the occurrence of the violations cited in the charge letter sent to the firm; and
>
> *Criterion 3.* The firm had developed and instituted an effective personnel training program as specified in §278.6(i)(2); and
>
> *Criterion 4.* Firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations; or it was only the first occasion in which a member of firm management was aware of, approved, benefited from, or was involved in the conduct of any trafficking violation by the firm. Upon the second occasion of trafficking involvement by any member of firm management uncovered during a subsequent investigation, a firm shall not be eligible for a civil money penalty in

---

[11] *See* 7 U.S.C §2021(b)(3)(B); *see also* 7 C.F.R §278.6(i).
[12] *See* 7 C.F.R §278.6(f)(1).
[13] *See* 7 C.F.R §278.6(i).

lieu of permanent disqualification. Notwithstanding the above provision, if trafficking violations consisted of the sale of firearms, ammunition, explosives or controlled substances, as defined in 21 U.S.C §802, and such trafficking was conducted by the ownership or management of the firm, the firm shall not be eligible for civil money penalty in lieu of permanent disqualification. For purposes of this section, a person is considered to be part of firm management if that individual has substantial supervisory responsibilities with regard to directing the activities and work assignments of store employees. Such supervisory responsibilities shall include the authority to hire employees for the store or to terminate the employment of individuals working for the store.[14]

The regulations provide additional guidance regarding how FNS should evaluate the evidence submitted with a request for a CMP. As to Criterion 1, "FNS shall consider written dated statements of firm policy which reflect a commitment to ensure that the firm is operating in a manner consistent with this part 278 of current FSP (food stamp program) regulations and current FSP policy on the proper acceptance and handling of food coupons."[15] As to Criterion 2, the compliance "policy statements shall be considered only if documentation is supplied which establishes that the policy statements were provided to violating employee(s) prior to the commission of the violation."[16] FNS may also consider:

(i)     Documentation reflecting the development and/or operation of a policy to terminate the employment of any firm employee found violating FSP regulations;
(ii)    Documentation of the development and/or continued operation of procedures resulting in appropriate corrective action following complaints of FSP violations or irregularities committed by firm personnel;
(iii)   Documentation of the development and/or continued operation of procedures for internal review of firm employees' compliance with FSP regulations;
(iv)    The nature and scope of the violations charged against the firm;
(v)     Any record of previous firm violations under the same ownership; and
(vi)    Any other information the firm may present to FNS for consideration.[17]

---

[14] *See* 7 C.F.R. §278.6(i).
[15] *See* 7 C.F.R. §278.6(i)(1).
[16] *See Id.*
[17] *See Id*

As to Criterion 3, the regulation provides compliance training program standards, requiring said training program be developed and implemented for all managers and employees. Furthermore, a firm which seeks a civil money penalty in lieu of a permanent disqualification shall document its training activity by submitting documentation, including but not limited to dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s).

Notably, although there are no additional regulations further explaining Criterion 4, FNS nevertheless discounted the substantial evidence provided by the Plaintiff in support of Criterion 4 in order for FNS to have the exercise its otherwise permissible discretion and impose a CMP in lieu of permanent disqualification. Despite the evidence put forth by the Plaintiff, and the lack of further regulations pertaining to Criterion 4, FNS chose to discount the evidence put forth in support of Criterion 4 and exercise its discretion in the manner most severe and detrimental to the Plaintiff when a less severe sanction was not only available under the statute, but also, proportionate in nature as compared to the charges.

### III.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

**A. PLAINTIFF IS ACCEPTED AS SNAP AUTHORIZED RETAILER**

Plaintiff, 7-Eleven, Inc. #F39372, is a corporation owned by Rupal Dharmesh Shah. (A.R. 3). The store at issue herein is located at 9856 Liberty Road, Randallstown, Maryland 21136. The store began operations on September 9, 2010 and applied for SNAP authorization on September 13, 2010. The store was authorized to participate in SNAP on September 21, 2010. This is the store's first alleged offense in violation of SNAP regulations.

**B.  VIOLATION OF SNAP REGULATIONS: TRAFFICKING CHARGES**

In September 2014, four (4) years after the Plaintiff became an authorized SNAP retailer, FNS conducted an undercover investigation into the Plaintiff. (A.R. 13-23). During the investigation, on two (2) dates, the investigator made "two visits to the store, both of which demonstrated trafficking violations."[18] Pursuant to the investigation, the FNS investigator avers that the store **clerk** engaged in conduct indicative of trafficking. First, on September 3, 3014, the FNS investigator attempted to purchase food and non-food items from the store **clerk**. The clerk's identity is unknown as is the clerk's relationship to the owner.  The investigator showed the store clerk his EBT card and the clerk permitted the investigator to use the EBT card to purchase food items, at which time, the clerk swiped the EBT card for the purchase of the food items, told the investigator the balance that was due, and gave the investigator his purchase and receipt. The investigator replied that he did not have cash and that he would return to the store in order to purchase the non-food items. Pursuant to the report, the clerk asked if the investigator wanted cash and he said, "yes," asking for $40.00. The clerk charged $80.25 on the EBT card and gave the investigator a receipt and $40.00 from the clerk's pocket. The investigator then used $20.00 to purchase the non-food items. (A.R. 15-18).

On September 8, 2014, the investigator made a second visit, on which date, a second clerk was at the counter. The investigator brought several food items to the counter and asked for $20.00. Notably, the clerk did not respond, so the investigator told him that the other clerk gave him cash last week. The second clerk motioned to the previous clerk and told the investigator to talk to him, at which time, the investigator went to talk to the previous clerk. The clerk processed

---

[18] Government Motion to Dismiss, at 10.

the eligible items and the investigator swiped his EBT card in the amount of $60.48 and the clerk then gave the FNS investigator $30.00 from his pocket. (A.R. 13-23). Identification information ascertained from the investigation indicates that both transactions were handled by one clerk.[19] Herein, the second clerk's lack of acquiescence to the investigator's request is demonstrative of the store policy which is in accordance with SNAP regulations and thus, the one clerk's conduct was not in accordance with policy, nor was it in accordance with the owner's operational rules and regulations, all of which are abided by the other employees.

Based on the aforementioned information, it is apparent that the violative transactions were conducted by only one employee who was not acting in accordance with store policy requiring compliance with SNAP rules. Not only would the second clerk not respond to the investigator's request for cash, but the second clerk directed the investigator to the same clerk from the previous transaction, and in both instances, the clerk removed money from his pocket, all of which indicates that the employee was not acting pursuant to established policy in accordance with SNAP rules and regulations.  At this stage of the procedure, it appears that the Plaintiff cannot deny the allegations regarding the two (2) visits made by the inspector to the store.

On October 15, 2014, FNS sent the Plaintiff a Charge Letter ("charge letter") advising them of the United States Department of Agriculture (USDA) Investigation as well as the trafficking charges, which was accompanied by a report detailing the transactions and the results of the investigation. (A.R. 10-11, 13-23).  Pursuant to the Charge Letter, the Plaintiff was charged with trafficking in violation of §271.2, the sanction for which is permanent disqualification as provided by Section §278.6(e)(1) of the SNAP regulations. (A.R. 10).

---

[19] *See* Government Motion to Dismiss, at 11; *see also* A.R. 16, 21.

The Charge Letter stated that within ten (10) days of receiving the Charge Letter, the Plaintiff may submit evidence regarding the violations and may present any information, explanation, or evidence regarding these charges in writing, orally, or by a scheduled in-person appointment. (A.R. 11). In addition, pursuant to the Charge Letter, the Plaintiff was advised that the pursuant to SNAP regulations, under certain conditions, FNS may impose a civil monetary penalty (CMP) up to $59,000.00 in lieu of permanent disqualification. However, Plaintiff had ten (10) days to respond to the allegations, request consideration for a civil monetary penalty (CMP), and present evidence that supported the four (4) criteria which Plaintiff must meet in order to be considered for a civil monetary penalty in lieu of permanent disqualification.[20] The Charge Letter indicated that, if a CMP were warranted in this case, the amount of the penalty would be $22,800.00.

## C. PLAINTIFF'S CHALLENGE TO THE CHARGES AND FNS' DISQUALIFICATION

On October 23, 2014, within the requisite ten (10) day period Plaintiff submitted a letter requesting consideration for a civil monetary penalty and provided evidence in support of the four (4) criteria which Plaintiff must meet to be considered for a civil monetary penalty in lieu of permanent disqualification. (A.R. 25-27). In requesting a CMP in lieu of permanent disqualification, the Plaintiff emphasized that, not only was this was a first-time offense, but that the offense was committed by one (1) employee who was not acting in accordance with store compliance policy. Pursuant to Section §278.6(i) of the SNAP regulations, in order to qualify for imposition of a civil monetary penalty in lieu of disqualification, the Plaintiff must satisfy the criteria promulgated under §278.6(i) and timely submit "substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and

---

[20] *See* 7 C.F.R. §278.6(i).

program to prevent violations of the program."

The Response Letter, which was not prepared or submitted by undersigned counsel, specified the evidence establishing Plaintiff's fulfillment of each of the four (4) criteria in order to be considered for a civil monetary penalty in lieu of permanent disqualification. (A.R. 25-27). Attached to the Response Letter were several notices and documents prepared by FNS including (i) SNAP Training Expectations; (ii) portions of SNAP Training Guide for Retailers; (iii) a portions of the FNS SNAP website discussing eligible and indelible food items and; (iv) SNAP notice regarding the consequences of buying and selling SNAP benefits. (A.R. 28-32).

The Plaintiff does not dispute the Government's response pertaining to its Response Letter. However, as to criterion 4, which states "firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations," Plaintiff emphasizes that, as exhibited by 252 SNAP Application, Rupal D. Shah is the only owner of the privately-held corporation, and as the sole owner, Ms. Shah submitted the SNAP application (A.R. 3).  The store's owner, Rupal D. Shah, was not in the State of Maryland at the time of the violations, and accordingly, the owner was not aware of, did not approve of, and did not benefit from the clerk's conduct. This contention will be further addressed below.

On December 5, 2014, FNS sent Plaintiff a Determination Letter notifying the Plaintiff that FNS had determined that the alleged trafficking violations cited in the Charge Letter occurred at Plaintiff's store and that upon receipt of said letter, Plaintiff was permanently disqualified from participation in SNAP. (A.R. 37-38). The Determination Letter also informed Plaintiff that FNS considered Plaintiff's eligibility for a trafficking CMP pursuant to the terms of Section 278.6(i); however, it was determined that Plaintiff was not eligible for the CMP because Plaintiff "failed to submit sufficient evidence to demonstrate that [Plaintiff] had established and implemented an

effective compliance policy and program to prevent [SNAP] violations." (A.R. 37-38).

Therein, the Plaintiff was advised of its appeal rights to the Agency's Administrative Review Branch, together with contact information for the appeal and notification that the appeal must be filed within ten (10) days of receiving the Determination Letter. (A.R. 37-38). In accordance with this decision, the Determination Letter informed the Plaintiff that it was permanently disqualified from SNAP, effective upon receipt of said letter. The Determination Letter was received by the Plaintiff on December 8, 2014 at 10:07 a.m. (A.R. 39).

Notably, pursuant to FNS' investigation, program specialist Ray Raymond compiled a Retailer Reply and Case Sanction Recommendation which was **not** provided to Plaintiff with the Determination Letter. (A.R. 33-36). Thus, although Plaintiff was able to file for Administrative Review, the only information on which Plaintiff could rely was the boiler-plate, two (2) page Determination Letter which does not include the *reasons* for which FNS concluded that Plaintiff failed to satisfy any of the four (4) criteria, nor does it include the *evidence* that FNS avers was missing from the Plaintiff's Response Letter. It was only upon receipt of the Administrative Record, once Plaintiff filed a Complaint in federal court against Defendant United States, that Plaintiff was finally provided with the thorough report detailing the reasons for permanent disqualification. As such, all prior action is supremely tilted in favor of the Administrative Agency which has full access to these documents -- documents which the Plaintiff only receives once a complaint, and the requisite $400.00 fee, is filed to initiate the judicial review process.

Pursuant to the Retailer Reply and Case Sanction Recommendation, in preparing its Determination Letter, FNS noted that Plaintiff did not deny that the trafficking occurred, but rather, requested a CMP in lieu of permanent disqualification, in light of the fact that this was a first-time offense. (A.R. 33-364). According to the Government's Motion to Dismiss, as well as

the Retailer Reply and Case Sanction Recommendation, FNS determined that Plaintiff failed to satisfy any of the requirements. First, as to criterion 1, Plaintiff did not provide written proof that the compliance policy was conducted routinely, such as signed training sheets and/or routine training sheets, nor was there documentation to support that the store was maintaining records of training or that any training pre-dated the violations. (A.R. 34).  As to criterion 2, FNS noted that despite Plaintiff's claim that proof of its compliance policy would be attached to the Response Letter, Plaintiff failed to provide any attachments listing the names of the owners and employees, the relevant dates of employment, and/or the dates on which training occurred. (A.R. 34-35).

Plaintiff strongly contests FNS' rationale regarding criterion 3 and 4. Specifically, as to criterion 3, FNS found that although Plaintiff submitted FNS training materials as attachments, it did not submit written statements verifying that the training was conducted. (A.R. 35).  Next, as to criterion 4, FNS found that Plaintiff's allegation that the owner was out-of-the-state at the time of the violations does not prove either a lack of knowledge, nor does it prove that the violations were not condoned. (A.R. 35-36). In justifying its decision, FNS noted that, by Plaintiff's own statement, Mr. Desai, who is part of management, was present at the time of the violations. Conversely, in the Government's Motion to Dismiss, even the Government draws a distinction between management and ownership, thus recognizing that criterion 4 can be satisfied when "'it is only the first occasion in which a *member of firm management* was aware of, approved, benefited from or was involved in the conduct of any trafficking violations by the firm.'"[21]

Lastly, FNS found that Plaintiff failed to prove that the owner did not benefit from the violations because, purportedly, payments from EBT card transactions are paid directly into the owner's bank account. (A.R. 36). However, FNS fails to provide any documentation, such as

---

[21] Government Motion to Dismiss, at 31 (citing 7 C.F.R. §278.6(i)) (emphasis added).

bank records, or at minimum, documents verifying the bank and/or bank account number associated with the store's SNAP authorization (as required when becoming an authorized SNAP retailer), or documents listing the name of those person(s) with access to the bank account which FNS avers is associated with Plaintiff's SNAP authorization.  In failing to produce *any* bank records in support of its contention, and absent any other evidence in support thereof, FNS' bald allegations that the Plaintiff benefited from the trafficking violations is not only wholly unsupported and without merit, but it is yet another example of action by the Department of Agriculture which is arbitrary and capricious.

### E.  ADMINISTRATIVE REVIEW: TRAFFICKING CHARGES ARE UPHELD

In a letter dated December 12, 2014, Plaintiff, through undersigned counsel, requested administrative review to the Administrative Review Board ("Request Letter"). (A.R. 40-45). The letter requested that Plaintiff be issued a CMP in lieu of permanent disqualification, urging FNS to find that Plaintiff satisfied Criterion 1 and 2 based upon several reasons. First, the letter advised that Plaintiff fired the sole employee responsible for committing the acts in violation of SNAP rules and regulations and further, advised that the employee received SNAP training prior to the alleged violations, thereby demonstrating that the store had a compliance policy in place on the date of the violations. Attached to the Request Letter, Plaintiff provided the store's payroll printout, dated October 20, 2014, which documents that the employee was terminated and thus no longer employed by the store. (A.R. 58). In addition, the letter advised that all employees were informed of the reason for termination and that each employee was required to continue undergoing additional SNAP training and that the Plaintiff's policy was to train all employees in SNAP regulations, post all USDA/FNS posters, review the SNAP regulations and training materials, and maintain procedures to log employees' dates and times of employment. (A.R. 42).

14

In an effort to demonstrate compliance with SNAP regulations, the Request Letter indicated that each employee had an account of the firm's database listing the 7-Eleven courses to be completed, as well as a status report of the dates of completion, a copy of which was attached to the letter (A.R. 42, 59-62). Although the logs did not demonstrate completion of SNAP training, the purpose was to demonstrate that Plaintiff had an actual policy and program in place which employees were required follow as requisite training in order to comply with SNAP rules and regulations. Moreover, the Plaintiff asserts that it presented training materials to each employee and also reviewed said materials with each employee on a regular basis. As identified in the Request Letter, Plaintiff explained that upon receipt of the Charge Letter, the Plaintiff instituted training and compliance programs to ensure that each employee was properly trained as to the nuances of the SNAP regulations. Plaintiff also hired counsel to assist in the administrative review process, and also, to assist in ensuring SNAP compliance by all employees.

Plaintiff advises that the informal training program was meant to train all employees as to the store's regulations as well as the compliance standards of SNAP. In addition, not only was the clerk who committed the violations promptly terminated, but this was the Plaintiff's first violation since becoming an authorized retailer more than four (4) years earlier. Accordingly, the Plaintiff maintains that a permanent disqualification is unreasonable and detrimental given the facts of the case, specifically, that the owner was neither on the premises, nor was the owner even in in the State of Maryland, at the time of the violations.

Plaintiff's Request Letter explains that the alleged violations were the actions of one (1) employee who was not acting at the direction of the owner. Relying upon the nominal information provided pursuant to FNS' investigation, Plaintiff reiterated that the clerk gave the

investigator cash from his pocket, thus indicating that the employee was not acting on behalf of the store, nor was he acting in a manner that would be beneficial to the store's owner. Moreover, the two (2) nominal violations are the first violations to occur since the store became a SNAP authorized retailer more than four (4) years prior, and furthermore, the amount at issue was minimal in comparison to the sanction imposed -- a sanction of permanent disqualification which fails to consider the nature of the offense, the fact that it was a first time offense, or the alleged trafficking amount when determining whether the sanction is the appropriate punishment.

Notably, for a trafficking offense, permanent disqualification is not the only sanction that may be imposed and thus, based upon the evidence provided by the Plaintiff, as well as the nature of the offense in relation to the severity of the sanction, the Plaintiff avers that imposition of a CMP in lieu of permanent disqualification not only serves the purpose of the regulation, but will also not create a lifetime of disqualification based upon the actions of one clerk who was neither working at the behest of the owner, nor acting pursuant to store policy.

As to criterion 3, Plaintiff references the training database, therein reiterating that the store provided said materials and had begun instituting training and compliance programs to ensure that each employee was properly trained. (A.R. 43). The letter even suggested a forward thinking notion, such that following proper and thorough training of each employee, Plaintiff would permit USDA to inspect and interview all employees without notice so as to guarantee compliance. As in the instant case, where violations are committed by *one (1) employee* acting in a manner **not** in accordance with policy, Plaintiff avers that imposition of a CMP, as well as USDA inspections and training, both serve to punish the impermissible conduct while also imposing a sanction which will not have as detrimental an effect as permanent disqualification.

As to criterion 4, the Request Letter advised that the owner knew nothing about the violative behavior, nor did the owner approve or for benefit from the behavior, and reiterated that the owner was out of the state at the time of the violations. The letter further avers that "should FNS find that from management was aware of, approved, benefitted from, or was involved in the conduct, since this was a first offense, the Plaintiff still satisfied the fourth criterion." (A.R. 43).

As recognized by the Government, the Request Letter concluded with a plea for imposition of a CMP in lieu of disqualification, specifically, that the store is a "small community store located in Randallstown, Maryland," and as such, the store "operated as an outlet for nutritious food and sustenance for residence throughout the community." (A.R. 40-45). The Plaintiff had taken remedial measures to ensure continued compliance and as such, the two violations were "isolated incidents, without any knowledge, approval, involvement, or benefit by the owner," and as such, a permanent disqualification is an unconscionable penalty which will "result in adverse consequences for many innocent employees and community residents." (A.R. 40-45).

### F.  ADMINISTRATIVE REVIEW BOARD RESPONSE

On January 30, 2015, Administrative Review Officer ("ARO") Ronald Gwinn issued the Final Agency Decision, therein concluding that there was sufficient evidence to support imposition of a permanent disqualification. (A.R. 70-80). ARO Gwinn stated that, in an appeal of an adverse action, the appellant (i.e. Plaintiff) bears the burden of proving by a preponderance of the evidence, that the administrative actions should be reversed. (A.R. 72). That means that the Plaintiff "has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, might accept as sufficient evidence to support a conclusion that the matter asserted is more likely to be true than not true." (A.R. 72).

ARO Gwinn began by summarizing the events underlying the case herein, beginning with the USDA conducting an investigation of the Plaintiff's compliance with SNAP law and regulations in September 2014. (A.R. 71). He stated that the investigation report documents that on two (2) compliance visits, personnel at 7-Eleven, Inc. #F39372 committed SNAP violations by exchanging cash for SNAP benefits. (A.R. 71). Notably, ARO Gwinn failed to include the fact that the investigation record indicates that only one (1) unidentified clerk committed the violations.  (A.R. 9, 13-16, 21). ARO Gwinn the summarized the Plaintiff's arguments including: (1) Plaintiff took corrective actions after the violations occurred, including but not limited to, firing the employee responsible for the violative conduct; (2) it was a first violation; (3) the dollar amount associated with the conduct was minimal; and (4) a permanent disqualification would create a hardship for the community and the Plaintiff's store. (A.R. 75-77).

Specifically, ARO Gwinn recognized and stated "it should be noted that [] ownership was allegedly not involved in the violations," yet continues, "it cannot be accepted as a valid basis for dismissing any of the charges, or for mitigating the impact of those charges." (A.R. 75). Both ARO Gwinn and the Plaintiff agree that ownership was not involved; however, ARO Gwinn misinterprets the Plaintiff's argument as further explained below. Plaintiff has not requested dismissal of the charges, nor has the Plaintiff included information pertaining the owner's lack of involvement in an attempt to mitigate the impact. Rather, Plaintiff provided substantial evidence, as required, in an effort to demonstrate compliance with Criterion 4 in order to be eligible for imposition of a CMP in lieu of permanent disqualification.

ARO Gwinn noted that the Plaintiff did not dispute that the violations occurred, and also, the USDA officer rejected the claim that, because ownership was not involved in the commission

18

of the violations, the Plaintiff is thus "not accountable for compliance with SNAP regulations." Plaintiff avers that it was never the contention that it was "not accountable for compliance with SNAP regulations" but rather, that criterion 4, which is to be taken into consideration when determining whether to impose a CMP in lieu of permanent disqualification, specifically states "firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations." For purposes of the Administrative Review Appeal, Plaintiff admitted that the violations occurred at the store; however, at no time has the Plaintiff conceded that the violation(s) was committed by an individual with managerial responsibility, nor has the Plaintiff conceded that any individual with managerial responsibility was aware of, or on notice, of the conduct being committed by one of its rouge employee, when such conduct was not in accordance with store policy.

Herein, the Plaintiff explains that, even assuming, *arguendo*, that trafficking violations occurred, any violation was attributable to one clerk who was not acting in accordance with store policy and at no time did the investigator document an offense involving a store manager, owner, or any individual vested with managerial responsibilities. (A.R. 9). Plaintiff does not contend that it should not be held accountable for its employees' compliance with SNAP regulations; rather, the Plaintiff contends that, due to the nature of the alleged offense, and the clerkship responsibilities of the individual responsible for the violations, it is abundantly clear that ownership was not aware of, did not approve, did not benefit from, and/or was not in any way involved in the conduct or approval of trafficking, and thus, Plaintiff requests that the less severe sanction be imposed in order for Plaintiff to be held accountable for compliance with SNAP regulations, but also, so that Plaintiff may remain an authorized SNAP retailer -- but with the CMP trafficking sanction. Whereas permanent disqualification is the harshest penalty, Plaintiff

avers that ownership took remedial measures to address the situation, its ownership not only had no knowledge of the clerk's actions, but also did not benefit from the violations, and for all such reasons, imposition of a CMP is the appropriate remedy.

Next, ARO Gwinn examined Plaintiff's contention that the penalty imposed was unreasonable given that it was the store's first violation and that the amounts involved in the purported trafficking violations were *de minimis* and do not warrant permanent disqualification. ARO Gwinn explained that neither the Act nor the SNAP regulations require a minimum dollar threshold and that permanent disqualification is mandated by the regulations. (A.R. 76, citing 7 C.F.R. §278.6(e)(1)(i)). Notably, ARO Gwinn excludes the caveat for imposition of a CMP in lieu of permanent disqualification.

ARO Gwinn then examines Plaintiff's contention that permanent disqualification would create a hardship for the community and the Plaintiff's store. ARO Gwinn purports that the community would not suffer as there are three SNAP authorized stores within one-tenth mile radius and that "some degree of economic hardship is a likely consequence whenever a store is disqualified from participation in SNAP." (A.R. 76). ARO Gwinn essentially discounts Plaintiff's hardship contention in favor of upholding permanent disqualification.

As to the last contention asserted by the Plaintiff, ARO Gwinn examines whether the decision to deny a trafficking CMP in lieu of permanent disqualification was proper under SNAP law, regulations, and internal agency policy. (A.R. 77). As to criterion 1, 2, and 3, ARO Gwinn again discounts the substantial evidence provided, including eight (8) exhibits, and instead, falls back on the fact that Plaintiff did not submit contemporaneous dated documents of its compliance policy and programs proving that they were in effect on or after February 7, 2014, or prior to the dates of the violations. (A.R. 78). Rather, ARO Gwinn merely states that based on

the fact that the Plaintiff did not provide contemporaneous dated documentary evidence (as to criterion 1 and 2), or any contemporaneous dated evidence of training (as to criterion 3), "the Retailer Operations Division concluded that it was more likely true than not than an effective compliance program and policy was not in effect prior to the date of the violations." (A.R. 78).

As to criterion 4, despite the fact that there no additional regulations further explaining Criterion 4, ARO Gwinn nevertheless discounted the substantial evidence provided by the Plaintiff in support of Criterion 4 in order for FNS to exercise its otherwise permissible discretion and impose a CMP in lieu of permanent disqualification. Moreover, ARO Gwinn concedes that the Retailer Operations Division determined that the owner was not aware and did not approve of the violations. (A.R. 78). However, without any supporting documentation, ARO Gwinn purports that despite the lack of ownership involvement and knowledge, the owner benefited from the transactions. (A.R. 78). Within the cumbersome 84-page administrative record there is not one piece of evidence or valid documentation to support this contention -- a contention which is a mere attempt to justify the decision to forego imposition of a CMP and instead, uphold permanent disqualification.

Lastly, ARO Gwinn notes that Plaintiff cities several corrective actions taken upon notice of the violations, specifically, the six (6) factors which FNS may consider when evaluating the firm's compliance policy. As opposed to evaluating the evidence in support of the six factors, ARO Gwinn chooses to discount these factors because "the regulation is clear that FNS may consider these factors but is not required to do so." (A.R. 79). Arguably, although these factors are not mandatory, they are instructive; however, because the evidence set forth in support of these factors do not serve the interest of FNS, or do not support the decision to uphold permanent disqualification, these factors are wholly discounted. Instead, ARO Gwinn focuses on one (1)

21

paragraph in 7 C.F.R. §278.6(i)(1) which mandates what FNS shall consider when evaluating the firm's compliance policy standard. That single paragraph, which corresponds to criterion 1, only, states that "FNS shall consider written and dated statements . . . prior to the commission of the violation." (A.R. 79). ARO Gwinn discounts the six factors, which although not mandatory, are six possible categories of documentation which Plaintiff may provide in support of its claim for imposition of a CMP, and instead, ARO Gwinn relies solely upon the one paragraph requiring documents which ARO Gwinn knows is not contained within the exhibits provided by Plaintiff. By discounting the categories of permissible evidence in favor of the sole paragraph requiring certain documents not provided herein, ARO Gwinn attempts to justify its decision by, yet again, relying upon the "absence of contemporary documented written statements of firm policies dated prior to the trafficking violations." (A.R. 79).

ARO Gwinn found that although Plaintiff timely requested consideration for a trafficking CMP in lieu of permanent disqualification, Plaintiff did not meet all the requirements for a trafficking CMP.  Plaintiff contends that upon review of ARO Gwinn's response and decision to discount the plethora of documentation provided in support of Plaintiff's plea for imposition of a CMP, these "requirements" for a trafficking CMP are merely subjective and discretionary and as such, Plaintiff requests reversal of the underlying decision as well as review of the evidence provided in support thereof.

Based on a review of the evidence presented in this case, ARO Gwinn determined that "violations did occur during a USDA investigation." (A.R. 80). All transactions cited in the Charge Letter, which were conducted or supervised by a USDA investigator, are all thoroughly documented; thus, the decision to impose a permanent disqualification is sustained. (A.R. 80). Pursuant to the Plaintiff's right to judicial review, the Plaintiff's Complaint was thereafter filed

in the Federal District Court for the District of Maryland on February 25, 2015,

## IV.   APPLICABLE LEGAL STANDARDS

### A.  Scope of Judicial Review Under The Food Stamp Act

The Food Stamp Act provides for *de novo* judicial review of the final agency actions in the

United States District Court to "determine the validity of the questioned administrative action."[22]

The statute may accord the Agency's administrative action with "a presumption of validity."[23]

However, the statute does not remove all judicial authority as noted in the <u>Traficanti</u> dissent:

> "The Food Stamp Act mandates *de novo* review by a district court. The act states that "the suit in the United States district court…shall be a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue, except that judicial review of determinations…made pursuant to section §2025(c)…shall be a review on the administrative record." 7 U.S.C §2023(A)(15)(1996)(emphasis added). Thus the plain language of the Act requires *de novo* review. In addition the §2025(c) exception indicates and emphasizes that Congress intended a *de novo* hearing in all cases, except when specifically limited to a lesser standard of review under the Act. Any judicially created limit on a district court's power of review, like that created in Cross, thus defeats this expressed intent of Congress. Moreover, because an "administrative action" under 7 U.S.C. §2023(a)(15) must consist both of the finding of a violation and the punishment of that violation , I think, contrary to the Cross decision, that the Act mandates *de novo* review on both the finding of guilt and the sanction that is imposed. *See* <u>Ghattas v. United States</u>, 40 F.3d 281, 287 (8th Cir.1994) (conducting *de novo* review on liability as well as sanction).[24]

Moreover, in <u>Cross v. United States</u>,[25] the court further explained the right to review the

verdict as well as the punishment and/or sanction imposed, therein holding the following:

> We recognize that disqualification from participation in the food stamp program is not a criminal sanction. At the same time, that disqualification may have grave economic consequences to a retailer engaged in business in a depressed economic area where there is widespread use of food stamps. In such an area one who holds himself out as a retailer of food would be cut from a substantial segment of the buying public if he is disqualified from engaging in food stamp transactions.

---

[22] 7 U.S.C. §2023(a)(15).
[23] <u>Redmond v. United States</u>, 507 F.2d 1007, 1012 (5th Cir. 1975).
[24] <u>Traficanti v. U.S.</u> 227 F.3d 170, 178 (4th Cir. 2000).
[25] *See* <u>Cross v. U.S.</u>, 512 F.2d 1212 (4th Cir. 1975).

The opportunity to engage in food stamp transactions as a retailer is, of course, a privilege and not a right, but, under current law, the dichotomy of treatment between privilege and right has been obliterated. The constitutional guarantee of due process of law applies to both; and we think it applies here, because in a very real sense plaintiff will be deprived of "property" if he is disqualified from participation in the program from any period of time. Thus, we readily conclude that he may not be deprived of participation in the program, on the basis of his alleged wrongdoing, without being afforded procedural due process. Since, as we have shown, full procedural due processes is not provided at administrative levels where the fact and duration of disqualification are determined, we think that §2022 must be read to afford it in the district court so as to preserve the regulatory scheme from constitutional attack. Of course, in the instant case, plaintiff does not contest the fact of violation of the Act and the regulations, but this does not totally oust review. It is the sanction imposed, once a violation of the Act or regulations have been found, that constitutes the deprivation of property, not the mere fact of violation, and the Constitution  requires that due process be afforded before that deprivation becomes effective. Moreover, the gravity of the offense and possible mitigating circumstances usually present questions of fact and, in the instant case, they have not yet been determined in a proceeding in which procedural due process has been afforded.[26]

Herein, the Plaintiff does not dispute the violation; rather, Plaintiff vehemently contests and opposes the harshness of the sanction -- permanent disqualification as opposed to imposition of the otherwise permissible civil monetary penalty.

## B.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Plaintiff believes and avers that there were sufficient allegations in the Complaint to State a claim and notes that this is an appeal from an administrative agency which places an extreme burden on the Plaintiff to not only prove the existence of a compliance policy, but to also provide substantial evidence to be eligible for imposition of a CMP regardless of the owner's lack of knowledge and/or involvement. For purposes of this subsection, Plaintiff submits that based on a review of the investigative report, the contention that trafficking violations occurred, as committed by one clerk, cannot be disputed; thus, the Plaintiff contests the severity

---

[26] Cross v. U.S., 512 F.2d 1212, 1217 (4th Cir. 1975).

of the penalty imposed and requests imposition of a CMP in lieu of permanent disqualification.

## C.  MOTION FOR SUMMARY JUDGMENT

There may be no genuine dispute as to any of the material fact concerning the violation but there is sufficient genuine dispute as to the nature of the extent of the punishment which Plaintiff contends is arbitrary and capricious and subject to the Court's discretion at this level. As in the instant case, when appealing the decision of an administrative agency such as the Department of Agriculture, Plaintiff is entitled to a hearing *de novo*. Lastly, based upon the disputed material facts and claims explained herein, as well as the harshness of the sanction, the Plaintiff avers that there is sufficient mitigating evidence to be offered in this case, and to allow the Plaintiff to proceed on the issues with hearing *de novo* before this Honorable Court.

## V.      ARGUMENT

## A.  PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED

Plaintiff contends that the administrative action of the USDA was arbitrary and capricious. First, for example, Plaintiff notes that in the Final Agency Decision, ARO Gwinn advised that Plaintiff cities several corrective measure which were taken upon notice of the trafficking violations; specifically, the six (6) factors which FNS may consider when evaluating a firm's compliance policy and program. As opposed to evaluating the evidence in support of the six factors, ARO Gwinn chooses to discount these factors because "the regulation is clear that FNS may consider these factors but is not required to do so." (A.R. 79).

Arguably, although these factors are not mandatory, they are instructive; however, because the evidence set forth in support of these factors do not serve the interest of FNS, or do not support the decision to uphold permanent disqualification, these factors are wholly discounted. Instead, ARO Gwinn focuses on one paragraph in 7 C.F.R. §278.6(i)(1) which mandates that

which FNS shall consider when evaluating a firm's compliance policy standard. The single paragraph which only corresponds to Criterion 1, states that "FNS shall consider written and dated statements . . . prior to the commission of the violation." (A.R. 79).

The action of USDA in upholding permanent disqualification was arbitrary and capricious as the USDA administrative review officer arbitrarily discounts the otherwise permissible and instructive factors, which although not mandatory, are six possible categories of documentation which Plaintiff may provide in support of its claim for imposition of a CMP. Herein, USDA ARO Gwinn relies solely upon the one paragraph requiring documents which ARO Gwinn knows is not contained within the exhibits provided by Plaintiff. By discounting the categories of permissible evidence, ARO Gwinn attempts to justify its decision by relying upon the "**absence** of contemporary documented written statements of firm policies dated prior to the trafficking violations" as opposed to relying upon the inclusion of documentation and evidence which would support imposition of a CMP in lieu of permanent disqualification.

Secondly, the action of USDA in upholding permanent disqualification was arbitrary and capricious as the USDA administrative review officer even conceded that "it should be noted that [] ownership was allegedly not involved in the violations." Despite conceding that ownership was not involved in the violative conduct, the USDA review officer nevertheless proceeded by discounting this information stating that "it cannot be accepted as a valid basis for dismissing any of the charges, or for mitigating the impact of those charges." (A.R. 75). Both ARO Gwinn and the Plaintiff agree that ownership was not involved; however, ARO Gwinn misinterprets the Plaintiff's argument as Plaintiff neither requested dismissal of the charges, nor did it try to mitigate the impact; rather, evidence pertaining to the owner's lack of involvement was included by the Plaintiff as such evidence is required in order to satisfy Criterion 4.

Herein, the Plaintiff provided substantial evidence, as required, in an effort to demonstrate compliance with Criterion 4, to be eligible for imposition of a CMP, which states "firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations." Despite conceding that the ownership was not involved, the ARO arbitrarily discounts the fact, as documented by the FNS investigator, the owner or manager was not involved in either transaction and moreover, as documented, the purported violations involved one (1) clerk who was not acting with the owner's knowledge or permission. Despite this information and documentation, ARO still chooses to discount the lack of ownership involvement, consideration of which would support imposition of a CMP in lieu of permanent disqualification.

For purposes of the Administrative Review Appeal, Plaintiff admitted that the violations occurred at the store; however, at no time has the Plaintiff conceded that the violation(s) was committed by an individual with managerial responsibility, nor has the Plaintiff conceded that any individual with managerial responsibility was aware of, nor on notice, of the impermissible conduct being committed by one (1) store clerk.

Even assuming, *arguendo*, that the violations occurred, any violation was attributable to one clerk who was not acting in accordance with store policy and at no time did the investigator document an offense involving a store manager, owner, or any individual vested with managerial responsibilities. Plaintiff does not contend that it should not be accountable for its employees' compliance with SNAP regulations; rather, the Plaintiff contends that, due to the nature of the alleged offense, and the clerkship responsibilities of the individual responsible for the violative conduct, it is abundantly clear that ownership was not aware of, did not approve, did not benefit

from, and/or was not in any way involved in the conduct or approval of trafficking.

In sum, Plaintiff avers that not only did the ownership take remedial measures to address the situation, but that the ownership had no knowledge of the clerk's conduct, nor did the ownership benefit from the violations. Thus, for all such reasons, the Plaintiff requests that this Honorable Court impose the less severe sanction of a CMP in lieu of permanent disqualification.

## B. CONCLUSION

The Plaintiff contends that disqualification is unnecessarily disproportionate to the violation and a civil monetary would be the more appropriate and permissible sanction. The court, on *de novo* judicial review, shall determine the validity of the administrative action, and in determining the validity of the agency's actions, the court *may* take into consideration the disproportionality and harshness of the disqualification.[27] Although the USDA decision to subject Plaintiff to permanent disqualification is within the statutory and regulatory guidelines, had USDA decided to impose a CMP in lieu of disqualification, such a determination is *also* "fully within the statutory and regulatory guidelines."[28]

The Plaintiff's complaint should not be dismissed because it is an appeal from a decision of an Administrative Agency which places an extreme burden on the Plaintiff to not only **prove** the existence of its compliance policy and program, regardless of limited number of trafficking infractions, or even the owner's lack of knowledge and/or involvement with the trafficking incidents, but also, Plaintiff is required to provide substantial evidence to satisfy the six (6) requirements for a civil monetary penalty (CMP), in lieu of permanent disqualification.

For example, UDSDA arbitrarily held that the Plaintiff failed to satisfy criteria 4 in that on one occasion, USDA avers that the owner vested another employee with managerial

---

[27] *See* 7 C.F.R. §279.7(c).
[28] Government Motion to Dismiss, at 32.

responsibilities and thus, Plaintiff could not demonstrate that "firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations." However, USDA within another argument contained within the Final Agency Decision, ARO Gwinn concedes that "it should be noted that [] ownership was allegedly not involved in the violations;" yet the agency arbitrarily dismisses this evidence stating, "it cannot be accepted as a valid basis for dismissing any of the charges, or for mitigating the impact of those charges." (A.R. 75).

On one hand, the USDA review officer found that Plaintiff failed to satisfy criterion 4 because the owner had vested another employee with managerial responsibilities the Plaintiff was therefore unable to demonstrate lack of involvement as the two were essentially on in the same. On the other hand, the Government, in its motion to dismiss arbitrarily draws a distinction between management and ownership conceding "criterion 4 could also be satisfied 'it is only the first occasion in which a member of firm management was aware of, approved, benefited from or was involved in the conduct of any trafficking violations by the firm.'"[29]

The Government continues that the agency decision should be upheld because Plaintiff cannot satisfy this element "because firm ownership, not firm management, benefited from the trafficking and criterion 4 references situations in which the firm management is involved, but not the firm owner." As conceded by the Government, which also attempts to draw an arbitrary and incorrect distinction (without providing any documentation of the owner's bank account), it is abundantly clear that the actions of the USDA were arbitrary and capricious as the Plaintiff provided substantial evidence demonstrating compliance with the four (4) applicable criteria; thus, Plaintiff avers that FNS abused its discretion when it permanently disqualified the Plaintiff.

---

[29] Government Motion to Dismiss, at 31 (citing 7 C.F.R. §278.6(i)).

For the aforementioned reasons, the Plaintiff requests that this Honorable Court deny the

Government's Motion to Dismiss, or alternatively, for Summary Judgment, and allow the case to

proceed to a *de novo* hearing on the issues presented, specifically the issue of the sanction, which

the Plaintiff contends to be arbitrary and capricious.


Respectfully submitted,


_____/s/_____
ALLISON R. LEVINE
Federal Bar No.: 29987
Roland Walker & Marc Zayon, P.A.
201 N. Charles Street, Suite 1700
Baltimore, Maryland 21201
(410) 727-3710
*Counsel for Plaintiff,* 7-Eleven Inc. #F39372