UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**GEORGE L. RUSSELL, III**
United States District Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-4055

January 29, 2016

MEMORANDUM TO COUNSEL RE:     7-Eleven, Inc. v. United States of America
                                                       Civil Action No. GLR-15-543

Dear Counsel:

Pending before the Court is Defendant's, United States of America (the "Government"), Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 12). The Motion is ripe for disposition. Having considered the Motion and supporting documents, the Court finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2014). For the reasons stated below, the Motion will be granted.

The Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the food stamp program, provides eligible households with SNAP benefits that may be used to purchase eligible food items at authorized retail stores. AJS Petroleum, Inc. v. United States, No. L-11-1085, 2012 WL 683538, at *1 (D.Md. Mar. 1, 2012); see 7 U.S.C. §§ 2011 et seq. (2012). SNAP is operated by the United States Department of Agriculture ("USDA") and administered by the USDA's Food and Nutrition Service ("FNS"). See 7 C.F.R. § 271.3 (2015). FNS provides SNAP recipients with monthly credits on an Electronic Benefit Transfer ("EBT") card to purchase eligible items. The EBT cards operate much like debit or credit cards. Authorized retailers debit the SNAP recipient's account and are then reimbursed by the Government. Retailers may only accept SNAP benefits for eligible food items and are strictly prohibited from trafficking, which includes, inter alia, exchanging SNAP benefits for cash. Id. § 271.2. "FNS may disqualify any authorized retail food store . . . from further participation in the program if the firm fails to comply with [FNS's regulations]." Id. § 278.6(a). FNS shall disqualify a firm permanently if "[p]ersonnel of the firm have trafficked." Id. § 278.6(e)(1). FNS may, however, impose a civil money penalty ("CMP") in lieu of permanent disqualification for trafficking if the store demonstrates that it meets certain criteria. Id. § 278.6(a).

Plaintiff 7-Eleven Inc. #F39372 ("7-Eleven"), a convenience store located in Randallstown, Maryland, became an authorized SNAP retailer on September 21, 2010. FNS conducted an investigation of 7-Eleven in September 2014. On September 3, 2014, an investigator entered the store and attempted to purchase ineligible items with an EBT card. A 7-Eleven clerk asked the investigator if he wanted cash in exchange for the SNAP benefits on the card. When the investigator said yes, the clerk gave the investigator cash from his pocket and the investigator used the cash to purchase the ineligible items. On September 8, 2014, the investigator visited the store again, brought several eligible food items to the counter, and asked a different store clerk for cash. When the clerk did not respond, the investigator stated that the first clerk had previously given him cash. The

investigator then spoke to the first clerk and asked for cash. The first clerk processed the eligible items, gave the investigator $30, and charged the EBT card $60.48.

On October 15, 2014, FNS sent 7-Eleven a letter (the "Charge Letter") stating that it had been charged with trafficking and the SNAP regulations provided for a sanction of permanent disqualification from SNAP. The Charge Letter noted that FNS may impose a CMP in lieu of permanent disqualification if 7-Eleven met the criteria outlined in 7 C.F.R. §278.6(i). 7-Eleven was required to request a CMP within ten days of receiving the Charge Letter and provide documentation demonstrating that the criteria were met. On October 23, 2014, 7-Eleven responded to the Charge Letter, requesting a CMP without challenging the trafficking violation. On December 5, 2014, FNS issued a letter informing 7-Eleven that it found that 7-Eleven was ineligible for a CMP because 7-Eleven failed to satisfy any of the CMP criteria and it would impose a permanent disqualification.

On December 12, 2014, 7-Eleven sought administrative review, requesting that FNS issue a CMP in lieu of a permanent disqualification. On January 30, 2015, FNS's Administrative Review Branch ("ARB") issued its Final Agency Decision, finding sufficient evidence supported a permanent disqualification. On February 25, 2015, 7-Eleven brought this suit, seeking judicial review of the agency's action. (ECF No. 1). On April 29, 2015, the Government filed a Motion to Dismiss or, in the Alternative, for Summary Judgment[1] (ECF No. 12). 7-Eleven filed a Response to the Motion on June 16, 2015 (ECF No. 15), and the Government filed a Reply on July 30, 2015 (ECF No. 16).

Under Federal Rule of Civil Procedure 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

---

[1] The Government does not argue that the Complaint should be dismissed due to a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Instead, the Government notes "summary judgment is a proper means of disposing of a request for review under 7 U.S.C. § 2023(a)(13), where there are presented no genuine issues of material fact." Mahmood v. United States, No. WMN-12-0228, 2012 WL 3038638, at *2 (D.Md. July 24, 2012) (quoting Bon Supermarket & Deli v. United States, 87 F.Supp.2d 593, 599 (E.D.Va. 2000)). "When 'matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'" Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(b)). Because the Court will consider the administrative record (ECF No. 11), the Court will construe this Motion as one for summary judgment.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248.

A retail store may obtain judicial review of a final determination by the FNS by filing suit against the United States in district court. 7 C.F.R. § 279.7. "The suit in the United States district court . . . shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue . . . ." 7 U.S.C. § 2023. Plaintiffs, however, are not entitled to reach a trial on the merits of their claims; "Congress simply 'intended . . . [that] the district court would not be bound by the administrative record.'" Mahmood, 2012 WL 3038638, at *2 (quoting Bon Supermarket & Deli, 87 F.Supp.2d at 598). "Factual determinations of whether or not the allegations took place are reviewed 'de novo,' while penalty determinations are reviewed under the arbitrary or capricious standard." Id. (quoting Ahmed v. United States, 47 F.Supp.2d 389, 393 (W.D.N.Y. 1999)); see Cross v. United States, 512 F.2d 1212, 1218 (4th Cir. 1975) ("To be 'valid,' a sanction must not be arbitrary and capricious . . . . Thus, the scope of review of a sanction is not as broad as the scope of review of the fact of violation.").

Here, 7-Eleven concedes the trafficking violations occurred (see Resp. to Mot. to Dismiss at 9, 18, 19, 24, ECF No. 15-1), but contests FNS's imposition of the permanent disqualification sanction. The Court will, therefore, review the sanction based on the arbitrary and capricious standard. 7-Eleven argues the sanction is arbitrary and capricious because the ARB failed to properly consider the CMP criteria as outlined in 7 C.F.R. §278.6(i) when evaluating 7-Eleven's SNAP compliance policy and program. The Court disagrees. FNS must find that store owners are permanently disqualified if owners cannot prove by substantial evidence that they had an effective program to prevent future violations. 7 U.S.C. § 2021(b) ("[D]isqualification . . . shall be . . . permanent upon . . . the first occasion . . . of a disqualification based on the purchase of coupons or trafficking in coupons . . . except that the Secretary shall have the discretion to impose a civil [money] penalty . . . if the Secretary determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and the regulations.").

The CMP criteria require a firm to provide substantial evidence that establishes its fulfillment of each of the following criteria:

3

> Criterion 1. The firm shall have developed an effective compliance policy as specified in § 278.6(i)(1); and Criterion 2. The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of violations cited in the charge letter sent to the firm; and Criterion 3. The firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2); and Criterion 4. Firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations; or it is only the first occasion in which a member of firm management was aware of, approved, benefited from, or was involved in the conduct of any trafficking violations by the firm.

7 C.F.R. § 278.6(i).

With regard to Criterion 2, the firm's documentation will only be considered if they establish that the compliance policy was given to the violating employees prior to the SNAP violation. Id. at § 278.6(i)(1). Additionally, in evaluating the effectiveness of a firm's compliance policy, FNS may consider documentation regarding the development and operation of the firm's SNAP compliance policy, remedial procedures following SNAP violations, and internal review procedures; the nature and scope of the violations; and any other information the firm may present for consideration. Id.

Upon review of the administrative record, the ARB considered evidence submitted by 7-Eleven regarding each criterion outlined in 7 C.F.R. § 278.6(i).[2] 7-Eleven provided evidence that it developed a compliance policy and that firm ownership was not aware and did not approve of the trafficking violations.[3] Further, 7-Eleven notes that these occurrences were only its first SNAP violation. It was not established, however, that 7-Eleven instituted an effective personnel training program prior to the occurrence of the violations. Specifically, 7-Eleven submitted documents demonstrating that its employees had not completed the SNAP training. (ECF No. 11-3); see id. at § 278.6(i)(2) (stating a firm seeking a CMP shall submit "dated training curricula and records of dates training sessions were conducted; a record of dates of employment . . . ; and contemporaneous

---

[2] The ARB also considered whether 7-Eleven would be entitled to a CMP due to the potential hardship its permanent disqualification may have on the community. Based on the evidence presented to the ARB, it found that there would be no hardship to the community surrounding 7-Eleven.

[3] Additionally, 7-Eleven argues the ARB failed to consider that the owner was not aware of and did not benefit from the trafficking violations. "Congress specifically intended that all owners be subject at least to some penalty, regardless of fault. The circuit courts that have examined the question agree that penalties attach to the owner, regardless of fault." Traficanti v. United States, 227 F.3d 170, 174 (4th Cir. 2000). Even assuming the owner's ignorance of the violations, the statute dictates that 7-Eleven face the consequences for its employee's behavior. Id.

documentation of the participation of the violating employee(s) in . . . training held prior to the violation(s).").

In applying the arbitrary and capricious standard, the Court finds that the ARB did not abuse its discretion in upholding the permanent disqualification of 7-Eleven because it properly considered the CMP criteria. "[P]ermanent disqualification from [SNAP] is well within the bounds of agency discretion. Indeed, permanent disqualification is mandated by the statute itself." Traficanti, 227 F.3d at 175; see Mahmood, 2012 WL 3038638, at *3. Finding that the Government is entitled to judgment as a matter of law, the Court will grant the Motion.

For the foregoing reasons, the Government's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 12) is GRANTED. The Complaint (ECF No. 1) is DISMISSED. Despite the informal nature of this memorandum, it shall constitute an Order of this Court, and the Clerk is directed to docket it accordingly and CLOSE this case.

        Very truly yours,

        /s/
        _____

        George L. Russell, III
        United States District Judge